632 Phison Electronics v. Silicon Motion Technology 632 Phison Electronics v. Silicon Motion Technology 632 Phison Electronics v. Silicon Motion Technology 632 Phison Electronics v. Silicon Motion Technology 632 Phison Electronics v. Silicon Motion Technology and the issue is whether or not there is a dispute with the board over what the proper scope of the term predetermined data is. Yes, I agree that we both use the words replacement data. However, we believe that in the board's opinion, they did not use the replacement part of that. They only used data, and in doing so, it shows you in this section that we're very clear. You're arguing, I think, that they misapplied their construction. I don't think so, Your Honor. I think there's a difference. There is a difference. There is definitely a difference, Your Honor. We believe that if it was a misapplication, we wouldn't be discussing whether or not the 267 patent itself and its disclosure of what predetermined data was included or did not include a particular aspect. And again, the indicator is not something that's only in the prior art. The indicator, in this case, is in the patent itself. And so when we talk about the patent itself and we describe what the patent itself allows for a particular claim term, and it's noted here for predetermined data, what we are saying there is that the scope of the claim does not include a single indicator that's outside the scope of the claim, and that is a classic claim construction argument, not an argument that— We did not argue that predetermined data needed to be the same size as a matter of claim construction. No, Your Honor. Barbara, what we did argue in claim construction is that the term predetermined data must be construed in line with the specification and the claims of the 267 patent. That's what you see on this page. And the specification and the claims of the 267 patent, and the claims make it clear that predetermined data is different and separate from an indicator because an indicator is a claimed element in the 267 patent. Additionally, in the patent, on the first page of the 267 patent, column two, in the summary of the invention— and this language is important because it's not describing an embodiment. It actually says the invention of the 267 patent is directed to a data-accessing method, and that method prevents the host from receiving garbled codes. And if you look at the claim where this language appears, it is also a data-accessing method, and transmitting a single-block indicator doesn't prevent the host from receiving garbled codes at all. It is not—it's an indicator of an erased block status. It's not—predetermined data doesn't stop the garbled code problem. So between the clear disclosure of the patent, which says the invention solves the garbled code problem, and the differentiation between the use of these words in the claims and in the spec, we believe that the board erred in construing the term predetermined data, replacement data, to effectively not require replacement, to merely be any other data beyond what's stored. It's not replacement data. Can I just move on to the obviousness analysis because maybe all of this will be clarified with that? My understanding is that there's no dispute left at least, that Sharon discloses everything except for the transmitting step, predetermining data. So then we're left with Bennett. And the board at A10 cites the quote from Bennett. Bennett is directed, and at the end it says, such systems return the erased status and or erased data in response to the red operation from an erased block. So is the erased data in Bennett predetermined data? Your Honor, that's the board's decision and its basis for finding that the— Can you just answer my question? Is the erased data? Yeah, predetermined. That wasn't a subject— I don't know, Your Honor, because that wasn't the subject of the arguments below. The board's basis and the instituted grounds here rely on transmitting the ES bit and relying on that as being the predetermined data, not the other sections that have to be quoted in there. And you can see that on page A13 at the top. Although Fison is correct that the ES bit of Bennett can be an indicator, it can also serve as replacement data. The board's decision is that the ES bit is the replacement data that's being transmitted. But can you still answer my question? I mean, but Bennett is cited as the prior art, and they cite the ES bit and or erased data in response to a red operation from the erased block. Why isn't that sufficient? I mean, you're just focusing on the bit part of Bennett, but if you focus on the erased data, why is that not predetermined? I'd be happy to, Your Honor, because the erased—returning the erased data, again, this wasn't the issue. I mean, the board decided that's the garbled code. If you read that section of a block that is the erased section and you decode it under the guise of sharing, what you're going to get is garbled code. So you can't practice the invention by returning the garbled code that's exactly adopted. That's why the board did not rely on that section, because you're just practicing exactly the prior art if you return the garbled erased data instead of, in this case, they say an indicator because that's what they have to rely on because it wouldn't be decoded in the way that the data would. I could move on to NTP unless there are more questions about that combination, Your Honor. Is your reading of NTP really that whenever two references have overlapping elements, they can't be combined as a matter of law? No, Your Honor. Is that the way you read NTP? No, Your Honor. I'm not. What is your reading of NTP? Our reading of NTP is in a situation where you have two references that are being combined, and the obviousness combination as far as mapping to the element requires that you add to a reference something that is completely superfluous. That is where NTP kicks in. So in this particular example, Sharon doesn't disclose an element. They had merely taken the Bennett ES bit and replaced the indicator in Sharon with the indicator from Bennett. Classic obviousness analysis under KSR. What they did here is because the claims also require— Wait a second. Where does it say that they replaced the indicator in Sharon with the bit from Bennett? They didn't here, Your Honor. That's, I think, the problem. That's what they could have said. Well, they couldn't say that here. I think that's why they get themselves into an NTP problem. So your statement is they replaced the indicator in Sharon with the bit from Bennett. That's not correct. No, I was saying it hypothetically, Your Honor. If they had done that as part of an analysis, that would have been the only thing they had done, and then the overlap in the references wouldn't have made a difference. But because here what they did was they added the ES bit of Bennett, but because the claims also require another indicator, and they couldn't use the ES bit, which is itself an indicator. They couldn't use that for the indicator also in the claims because they had changed its function. No, they didn't. They used the flag from Sharon. They used the flag from Sharon. And they said that the bit from Bennett was predetermined data. They did, Your Honor. But importantly, they never said in their holding that the ES bit changed. It is still the ES bit. It is still an indicator. It's just been termed to be for the purposes of mapping replacement data. So what we get there is a situation where there is no function anymore remaining in having the Sharon indicator. Everything the Sharon indicator does, and the board doesn't dispute this, can be done by the ES bit. So from a technological standpoint, it is, as NTP explains, it's the height of hindsight when you're mapping elements to a claim to take something which in a real system would have absolutely no function at all because it had been completely replaced and to add that in merely for the purposes of mapping the claims. And that's the situation in this case where it's not merely an overlap. It's that they have to rely on a completely meaningless functionality in the system in order to get to the claims. And a person is a matter of law. When doing a combination, a person wouldn't do that because it's the definition of hindsight when the piece has no function in a real system anymore. It's completely superfluous. And I'm half of my light. Are there questions? May it please the Court. I don't believe that there is a claim construction dispute that can be raised here on the record below. In its preliminary response, Phison argued that predetermined data is replacement data stored before user operation. The board in its institution decision agreed that it was replacement data but declined to say that it was stored before user operation. At footnote 4 of page 13 of Phison's brief, they're not challenging the fact that stored before user operation was not part of the claim construction. Phison down below never proposed a claim construction that said replacement data must be larger than a bit. They never proposed a construction that said the data must be the same size. They also never proposed a construction that said the garbled code problem must be solved in the host. I agree they made those arguments with respect to application, but they did not make it with respect to claim construction. Thus, there was nothing to appeal with respect to claim construction. We know this from Phison's own words in its patent owner response. At A564, they say, first, the combined system would not practice the predetermined data limitation as construed by the board. And at A578, which is what the board relied on when it said Phison agreed with them, Phison says, in the institution decision, the board properly recognized that the claimed predetermined data must be replacement data. However, in applying this construction to the system of Sharon modified to use an ES bit, the board made an error. So I think it's clear that this is subject to the substantial evidence standard and not de novo review. Phison cannot meet that standard with respect to the obviousness combination. Sharon discloses a flash memory device having a flash controller that executes flash management software. That's a finding of the board at A9. The board also found at A8 to 9 that Sharon's invention is directed to reducing error rates. Yet Sharon does explicitly say you can set a flag or an indicator to indicate a new block. However, Sharon doesn't tell you what you do when you read that indicator. They say that's in the prior art. Look to the prior art logic. That's at A9. The prior art logic includes Bennett. Bennett and Sharon are both patents filed by a memory company, Sandisk, their related art. The board found you could properly combine these. And what it did is it said, how does Bennett deal with a new block? It sends back a status byte, for example, the ES bit and or the erased data. But it never focused on the erased data aspect, really. The board did not focus on the erased data. And you have one paragraph in your brief. We did make the argument down below that the erased data could be replacement data. The erased data plus the ES bit, because it's an and or, or the status byte itself. But the board did focus in on the ES bit, correct, in their holding. As far as the NTP issue goes, I don't think this is a situation where we need two networks and we're relying on one network from one and one network from another. That was the NTP case. Here, we have the flag cell in Sharon. Sharon doesn't tell you what to do when you read that flag cell. Bennett tells you you can transmit back a status byte. It includes, for example, the ES bit. That's all the board's relying on is the ability to transmit back to the host. And for those reasons, we would ask that the board's decision be affirmed. Are there any questions? Thank you, Your Honors. I'll be fairly quick. I only have five minutes. We don't argue, we don't dispute that we also argued application. Above and below. We argued both that the term scope, the claim had the wrong scope. We also argued the application. In pointing to portions of our brief, we argued application. Again, we're not appealing the application. We're only appealing the scope of the claim. With note to the erased data, that wasn't the basis of the board's decision. Under the general rule, it's not a sufficient ground to affirm their decision. As I noted, there was a systemically disputed topic. As I recall, they tried to raise that issue at the board. And it was subject to a request for reconsideration that was denied. So it was not... The board didn't need to go there because it disagreed with your newly revised claims instruction. It's possible, Your Honor, though I believe the board wouldn't have gone there because the petitioner sought... They inputted their petition and they sought in a request for reconsideration to reconsider the scope and that was denied. So I believe that would be outside the scope of what they could have argued. So if it was remanded back, I don't believe it would be within the scope of what the case should be considered. I haven't mentioned it yet, but I think it is significant to point out the significant teaching away. I do know that it's a fact issue here. And that is obviously reviewed with substantial evidence. But even the petitioner doesn't try to defend the board's rationale for why it found that there wasn't teaching away. The Sharon reference many times, over eight times, says that a significant part, an inventive part of the patent is to not reduce the size of the data. The board, in dismissing that argument, said that the disclosures in Sharon were directed to compression and they need to consider them. But if you look at the Sharon reference, there are numerous statements about the need to not reduce the size of the data that have nothing to do with compression. And in trying to defend the board's judgment, like I said, the petitioner doesn't argue the same grounds as the board. What they try to argue is that separate distinction, that discussion in Sharon about don't shrink the size of the data is somehow only connected to written blocks and not to new blocks. And I think that shows that on the merits of looking at Sharon, there isn't really any evidence to establish that the limitation and the constant teaching is restricted to just the compression because it's used so many places. And it's such a clear statement of the purpose of the invention is to not reduce the size of the data. Are there any more questions, Your Honor? Thank you. We thank both counsel and the cases submitted.